IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DALE R. FROST, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  CV06-174-S-BLW |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| RAY ROBERTSON; DONNA | ) | |
| ROBERTSON; EVAN SHAW; RICK | ) | |
| WATSON; LINDA GUSTAVSON; | ) | |
| GARY AMAN, Sheriff; DARYL | ) | |
| CRANDEL, Deputy; EDWARD | ) | |
| YARABROUGH, Prosecutor; | ) | |
| MATTHEW FAULKS, Prosecutor; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are Plaintiff's motion for summary judgment (Docket

No. 37), Defendants' motion for summary judgment (Docket No. 40), and Defendants'

motion to supplement brief (Docket No. 52).   Plaintiff has also filed a supplement and

several new motions, which the Court has reviewed (see Docket Nos. 53 through 55).

The Court heard oral argument on the motions for summary judgment on October 31,

2008.  Having reviewed the record and having considered the parties' arguments, the

Court enters the following Order.

**MEMORANDUM DECISION AND ORDER  1**

## BACKGROUND

The Court first notes that many of the facts included here are relevant only insofar as they provide a background for Plaintiff's current causes of action. The Court has reviewed and considered all of Plaintiff's filings, including two DVDs (Docket No. 53).

Plaintiff has filed three different complaints in this Court. In CV06-173-S-LMB, *Frost v. Lawson*, Plaintiff's complaint was dismissed for lack of jurisdiction and failure to state a federal claim upon which relief could be granted. In that case, he sued three private citizens who resided in Idaho, and he stated no adequate basis for federal subject matter jurisdiction. Plaintiff appealed the dismissal of his case to the Ninth Circuit Court of Appeals. On or about October 5, 2007, the appeal was dismissed for failure to pay the filing fee.

In CV06-28-S-BLW, *Frost v. Fuquay*, Plaintiff sued many private citizens, Owyhee County, and several county employees and officials, including a judge. The Court dismissed the complaint with prejudice because Plaintiff's claims (1) were barred by the statute of limitation, (2) failed to state a federal claim, or (3) were barred by absolute judicial immunity. Plaintiff did not file an appeal.

The present action, CV06-174-S-BLW, *Frost v. Robertson*, was filed on May 2, 2006. Plaintiff sued private citizens Ray Robertson,[1] Donna Robertson, Evan Shaw, Rick Watson, and Linda Gustavson, as well as Sheriff Gary Aman, Deputy Sheriff Daryl

---

[1] Ray and Donna Robertson are also referred to in the record as the "Robisons" or "Robinsons."

**MEMORANDUM DECISION AND ORDER  2**

Crandall,[2] Prosecutor Edward Yarbrough, and Deputy Prosecutor Matthew Faulks.  The Court previously notified Plaintiff that he could not proceed against private citizens Ray Robertson, Donna Robertson, Evan Shaw, Rick Watson, and Linda Gustavson because they were not state actors and their acts occurred more than two years prior to the filing of Plaintiff's complaint, rendering the claims untimely.

All of the claims in Plaintiff's three complaints arose from a series of altercations Plaintiff had with various private citizens.  In this action, he has submitted various statements, documents, DVDs, and other evidence spanning the claims in all of his Complaints.  Those items, together with those submitted by Defendants, construed in a light most favorable to Plaintiff, show the following.

On or about March 3, 2002, John Fuquay, Jennifer Gutoski, and various others who were later named as defendants in CV06-28-S-BLW, *Frost v. Fuquay*, allegedly assaulted Plaintiff and broke into and entered Plaintiff's motorhome.  After the incident, on April 9, 2002, Plaintiff made a video of himself and several witnesses (Carol Cook Martin and Tom Martin), labeled "DVD-Fuquay," in which he and the witnesses describe the incident.  This DVD has been submitted to and considered by the Court (Docket No. 53).

Plaintiff alleges that Deputy Long took a report of the incident, but failed to supplement the report to show that the individuals returned to Plaintiff's motorhome a

---

[2]  Daryl Crandall is also referred to in the record as "Daryl Crandel."

**MEMORANDUM DECISION AND ORDER  3**

second time to shoot off their guns and slash his tires.  When he told Sheriff Gary Aman

about the discrepancy, Aman allegedly said, "I go by my officer's report."  Plaintiff also

alleges that he told prosecutors about the incident, and they did not meet with him or

return his calls, even though he told them he wanted to have the individuals prosecuted.

He alleges that deputies took photographs of his injuries, but then lost the photographs.

(*See Plaintiff's Supplement, Motions, and Exhibits*, Docket Nos. 53 through 55.)

Plaintiff sued the Fuquays in two small claims actions in Owyhee County, CV04-

0442 and CV04-0443.  In each case, judgment for defendants was entered by Judge

Thomas J. Ryan on April 19, 2004.  (*See Motion to Refile and Exhibits*, Docket No. 54.)

On February 6, 2003, Plaintiff purchased a 1960s travel trailer from Evan Shaw

and/or Ray and Donna Robertson.  Plaintiff paid a down payment of approximately $550,

and two other payments; the total purchase price was to be $1,300.  Plaintiff had

purchased the trailer "as is" and found it was not in good working order.  He alleges that

the sellers had represented that everything in the trailer worked.  The parties, including

Ray and Donna Robertson, eventually had a dispute involving (1) Plaintiff demanding

return of his money, (2) Shaw and Robertson repossessing the travel trailer, and (3)

Donna Robertson securing a lost or duplicate title, which prevented Plaintiff from

obtaining title to the trailer.  (*See Motion to Refile*, Docket No. 54.)

Sometime around November 23, 2003, Plaintiff had an altercation with Kevin and

Gary Lawson near Plaintiff's motorhome.  These defendants and this incident were later

the subject of CV06-173-S-LMB, *Frost v. Lawson*.  Plaintiff retells this incident in a

**MEMORANDUM DECISION AND ORDER  4**

video he took of himself, labeled, "DVD-Kevin Lawson," which he has submitted to the Court (Docket No. 53). The Lawsons told Plaintiff to take his motorhome and leave the property where his motorhome had been parked.  At that time, Kevin Lawson allegedly took a videotape out of Plaintiff's video camera and hit and injured Plaintiff's chest, arm, and shoulder.  The sheriff apparently returned with the Lawsons and gave Plaintiff his videotape and a note that said "be out in three days."  (*See Plaintiff's Supplement*, DVD-Kevin Lawson, Docket No. 53.)

Plaintiff also states that on November 23, 2003, he asked Deputy Sheriff Hoagland (not a defendant) to cite Kevin Lawson for turning off Plaintiff's electricity and water. Kevin Lawson was cited, but Plaintiff states that Sheriff Gary Aman "quashed" the citation the same day.  However, it appears that the citation was later the basis for a criminal action that was filed, because on December 1, 2003, the prosecutor asked to have the criminal action against Kevin Lawson dismissed.  Judge Thomas Ryan dismissed the case against Kevin Lawson on December 4, 2003.  (*See Exhibit to Plaintiff's Motion*, Docket No. 55.)

On or about March 29, 2004, Plaintiff had a discussion with Evan Shaw inside of the Commercial Tire business in Grand View, Idaho.  Afterwards, Plaintiff had an altercation with Ray Robertson at Gus Gas Station.  Plaintiff alleges that Ray Robertson grabbed Plaintiff's arm and started choking him, and then broke Plaintiff's watch and gas can lid.  Plaintiff alleges that he tape-recorded himself saying to Robertson, "I'll call the sheriff and have you arrested," and Robertson retorting, "I'll tell them you hit me first."

**MEMORANDUM DECISION AND ORDER  5**

(*See Plaintiff's Motion*, Docket No. 55.)  When Plaintiff called the Owyhee Sheriff's Office, he was told that Rick Watson, the manager of Commercial Tire, had already called. Deputy Sheriff Daryl Crandall responded to the calls.  (*See Amended Complaint*, p. 7, Docket No. 7.)

Plaintiff alleges that Defendant Crandall wrote a false and malicious police report regarding the incident.  Crandall's report states that (1) Rick Watson, manager of Commercial Tire, told Crandall that he witnessed Plaintiff swing his fist at Ray Robertson, (2) Ray Robinson told Crandall that Plaintiff and Robertson argued and shoved each other, and then Plaintiff swung his fist at Robertson; and (3) Plaintiff told Crandall that Robertson grabbed him by the throat and arm and stated, "How would you like a sore arm?"  Plaintiff admits that he pushed Robertson away when Robertson started smashing his gas can spout.  (*Plaintiff's Response*, p. 14, Docket No. 47.)   Plaintiff alleges that he told Crandall he had physical injuries from the altercation; Crandall states that he observed no injuries.  (*See Affidavit of D. Crandall,* ¶¶ 2-6, Docket No. 40-6.) Plaintiff videotaped his injuries on April 2, 2004.  (*Plaintiff's Supplement*, DVD-Kevin Lawson, Docket No. 53.)  The video shows three red marks on the front of Plaintiff's chest, although the alleged injuries were to Plaintiff's neck and shoulder (*Amended Complaint*, p. 7, Docket No. 7; *Plaintiff's Response*, p. 13, Docket No. 47); the alleged potential injuries are described and pointed out on the video but are not readily apparent to the eye.   (*Plaintiff's Supplement*, DVD-Kevin Lawson, Docket No. 53.)

On March 30, 2004, Deputy Crandall wrote a report on the incident and requested

**MEMORANDUM DECISION AND ORDER  6**

that the case be sent to the prosecuting attorney's office for interpretation and a charging decision.  Deputy Crandall alleges that he had no further contact or involvement with Plaintiff concerning the March 29th incident and had no involvement in the ensuing criminal case, CR04-7908.  (*Id.*, ¶¶ 7&8.)  Plaintiff alleges that Mr. Crandall is untruthful and used false evidence.

Sheriff Gary Aman alleges that he had no personal involvement with Plaintiff regarding the March 29th incident or the subsequent criminal prosecution arising from the incident.  (*Affidavit of G. Aman*, ¶¶ 1&2, Docket No. 40-6.)  Plaintiff has offered no admissible evidence to contradict this allegation.

Defendant Prosecutor Yarbrough signed and filed a criminal complaint against Plaintiff on May 4, 2004.  He avers that the complaint was based on the March 29, 2004 incident and the police investigation and report.  (*Affidavit of E. Yarbrough*, ¶2, Docket No. 40-7.)  The complaint described the March 29, 2004 incident but incorrectly stated that the date of the occurrence was March *4*, 2004.   (*Id.*, Exhibit A, Docket No. 40-7.)  Plaintiff was charged with a violation of Idaho Code § 18-6409, misdemeanor disturbing the peace.  The magistrate court appointed counsel for Plaintiff.

On September 23, 2004, several days before Plaintiff's trial was to begin, Prosecutor Yarbrough moved to dismiss the case because the State no longer wished to pursue the matter.  *(Id.*, ¶ 8.) Defendants allege that Prosecutor Yarbrough's decision was not due to a lack of probable cause.  Yarbrough contends that all of his actions taken against Plaintiff were in the course of Yarbrough's role as prosecuting attorney.  (*Id.*, ¶ 8.)

**MEMORANDUM DECISION AND ORDER  7**

Defendant Matthew W. Faulks, also an Owyhee County Prosecuting Attorney, alleges that he had no personal involvement in the prosecution of, or the decision to terminate, Plaintiff's criminal case. *Id.*

It is undisputed that Plaintiff did not file a notice of tort claim with Owyhee County regarding the claims that are the subject of this action. *Affidavit of Charlotte Sherburn, ¶¶ 1-2* (Docket No. 40-5). In this case, Plaintiff has been permitted to proceed on the following causes of action: an equal protection claim and a malicious prosecution claim against Defendants Aman, Crandall, Yarbrough, and Faulks. Defendants treat these causes of action as both federal and state-law claims.

## SUMMARY JUDGMENT STANDARD OF LAW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

**MEMORANDUM DECISION AND ORDER  8**

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48

(1986).  Material facts are those which may affect the outcome of the case.  *See id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party,

*id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the

non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152,

1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable

inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th

Cir. 1988).  The Court must be "guided by the substantive evidentiary standards that

apply to the case."  *Liberty Lobby*, 477 U.S. at 255.

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001)(en banc).  To carry this burden, the moving party need not introduce any

affirmative evidence (such as affidavits or deposition excerpts) but may simply point out

the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman*

*Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to

support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond

the pleadings and show "by her affidavits, or by the depositions, answers to

interrogatories, or admissions on file" that a genuine issue of material fact exists.

*Celotex,* 477 U.S. at 324.

Only admissible evidence may be considered in ruling on a motion for summary

**MEMORANDUM DECISION AND ORDER  9**

judgment.  *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002); *see also*

Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is

the contents of the evidence rather than its form that must be considered.  *Fraser v.*

*Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could

be presented in an admissible form at trial, those contents may be considered on summary

judgment even if the evidence itself is hearsay.  *Id.* (affirming consideration of hearsay

contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of

contents would not be hearsay).

Statements in a brief, unsupported by the record, cannot be used to create an issue

of fact.  *Barnes v. Independent Auto. Dealers Ass'n of California Health and Welfare*

*Benefit Plan*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).  The Circuit "has repeatedly held

that documents which have not had a proper foundation laid to authenticate them cannot

support a motion for summary judgment."  *Beyene v. Coleman Sec. Services, Inc.,* 854

F.2d 1179, 1182 (9th Cir.1988).  Authentication, required by Federal Rule of Evidence

901(a), is not satisfied simply by attaching a document to an affidavit.  *Id.*  The affidavit

must contain testimony of a witness with personal knowledge of the facts who attests to

the identity and due execution of the document.  *Id.*

To state a claim under § 1983, a plaintiff must allege a violation of rights protected

by the Constitution or created by federal statute proximately caused by conduct of a

person acting under color of state law.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.

1991).

**MEMORANDUM DECISION AND ORDER  10**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Crandall, Aman, Yarbrough, and Faulks assert entitlement to summary judgment on several grounds. The Court will separately address each of their arguments.

### Statute of Limitations Defense - Defendants Crandall and Aman

Defendants Deputy Sheriff Daryl Crandall and Sheriff Gary Aman assert entitlement to summary judgment on all claims arising from incidents occurring prior to May 2, 2004, arguing that Plaintiff filed his complaint outside the statute of limitation period. The length of the statute of limitation for a civil rights action is governed by state law. *Wilson v. Garcia*, 471 U.S. 261 (1985). Idaho Code § 5-219 provides for a two-year statute of limitation for professional malpractice, personal injury, and wrongful death actions. Federal civil rights actions arising in Idaho are governed by this two-year statute of limitation.

Plaintiff filed his original complaint in this action on May 2, 2006. As the Court noted in the Initial Review Order (Docket No. 6), Plaintiff's claims arising from incidents that occurred prior to May 2, 2004, are barred by the statute of limitation. Here, Defendant Crandall asserts that he was not involved in the prosecution of Plaintiff, but that his involvement in the case ended on March 30, 2004, when he wrote a police report on the March 29th incident. (*Affidavit of Daryl Crandall*, ¶¶ 7-8, Docket No. 40-6).

Plaintiff has offered nothing linking Crandall to the specific time period when the prosecution was proceeding, between April and September 2004. He alleges that (at an unknown date and time, Plaintiff had his motor home parked at Strike Dam, and

**MEMORANDUM DECISION AND ORDER  11**

Defendant Crandall came by and flashed his spotlight on Plaintiff's motor home.  Plaintiff

went out and asked Crandall what he was doing, and when Plaintiff recognized Crandall,

Plaintiff told Crandall that he would see him and the others in federal court.  *(See*

*Response to Motion for Summary Judgment*, p. 15, Docket No. 47.)   Plaintiff said that

someone then started to come by and check on the motor home regularly, and so he

decided to move to Horseshoe Bend.  *Id.*  Plaintiff does not provide a date for the incident

with Crandall, but because Plaintiff references his federal court action, it is clear that it is

closer in time to 2006 (the filing date of the federal case) than 2004 (the year of the

criminal prosecution).  This evidence is too speculative and too remote in time to connect

Crandall to the prosecution.

Defendant Aman asserts that he had no involvement whatsoever in the incident,

investigation, or prosecution involving Plaintiff.  *See Affidavit of Gary Aman* (Docket No.

40-8).  Plaintiff's allegations surrounding Sheriff Aman are from dates prior to May 2,

2004.  Particularly, Plaintiff alleges that Sheriff Aman "quashed" all incidents he was

involved with, including the beating in 2002, the stolen travel trailer in 2003, and the

beatings in March 2004.  (*See Plaintiff's Response*, p. 31, Docket No. 47.)

In summary, Plaintiff has brought forward insufficient evidence showing that these

two Defendants were involved in the prosecution of Plaintiff on or after May 2, 2004,

which is two years before the filing date of his Complaint.  Therefore, Plaintiff's claims

against these Defendants are dismissed with prejudice as untimely.

**Lack of Personal Participation Defense - Defendants Aman, Faulks, and**

**MEMORANDUM DECISION AND ORDER  12**

**Crandall**

The Ninth Circuit has explained that a person cannot be sued under § 1983 unless the element of personal participation is met.  Particularly, in *Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989), the court outlined the requirements for a finding of proximate causation between the person sued and the alleged constitutional violation:

> Liability under section 1983 arises only upon a showing of personal participation by the defendant.  *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979).   A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983.

*Id*. at 1045.

Here, both Defendant Sheriff Gary Aman and Defendant Prosecutor Matthew W. Faulks assert that they had no personal involvement in the March 29, 2004, incidents involving Plaintiff, or the subsequent investigation or the prosecution of Plaintiff.  *(See Affidavit of Gary Aman,* Docket No. 40-8; *Affidavit of G. Edward Yarbrough,* Docket No. 40-7.)  Plaintiff has not brought forward any evidence to the contrary as to the claims that survived the statute of limitation defense.

As noted above, Defendant Daryl Crandall asserts that the latest act he was involved in was his March 29, 2004, police report arising from the Ray Robertson incident.  Because Plaintiff has provided no evidence showing that Crandall was involved in the prosecution after he prepared the police report on March 30, 2002, Crandall is entitled to summary judgment on the defense that he did not personally participate in the

**MEMORANDUM DECISION AND ORDER  13**

alleged constitutional violation during a time period within the statute of limitation.

In summary, Defendants Aman, Faulks, and Crandall are entitled to summary judgment on Plaintiff's claims against them for failure to state a claim upon which relief can be granted because he has failed to bring forward facts showing that he can meet the required element of personal participation in a constitutional violation.

**Absolute Prosecutorial Immunity - Defendant Yarbrough**

Prosecutor Edward Yarbrough asserts entitlement to absolute prosecutorial immunity.  A prosecutor is absolutely immune from damages arising from the performance of the traditional functions of an advocate.  *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 424-25 (1976).  However, when a prosecutor steps outside of the advocate's role, his conduct is protected by immunity only to the extent that any other individual would be protected in performing the same function.  Immunity determinations depend on "the nature of the function performed, not the identity of the actor who performed it."  *Kalina*, 522 U.S. at 127 (citations omitted).

Absolute immunity therefore applies when a prosecutor performs traditional prosecutorial functions in connection with hearings, such as drafting affidavits, selecting the information to put into them, determining whether evidence meets the probable cause standard, deciding to file charges, and presenting affidavits to the court.  *See Kalina*, 522 U.S. at 130-31.  However, prosecutors are entitled to only qualified immunity for performing "investigative" functions normally carried out by police officers.  *Kalina*, 522 U.S. at 126-27.  Likewise, when a prosecutor steps into the role of a complaining witness,

**MEMORANDUM DECISION AND ORDER  14**

such as personally attesting to facts in an affidavit, he is no longer functioning as an advocate, and absolute immunity is lost. *See Kalina*, 522 U.S. at 130 ("Testifying about facts is the function of the witness, not of the lawyer."). The difference is whether the prosecutor acted as "an investigative fact witness, as in *Kalina*," which is not a protected act, or he acted as "a prosecutor providing information concerning the pertinent procedures and criminal statutes as well as the underlying evidence to the court," which is a protected act. *Uribe v. Cohen*, 2006 WL 2349567, at *4 (D. Conn. 2006).

Defendant Edward Yarbrough asserts that all of his contacts with Plaintiff have been in the course of pursuing criminal charges against Plaintiff, and then subsequently dismissing those charges. However, he signed the criminal complaint as the "complainant," and the complaint is a sworn document. Therefore, Yarbrough has absolute immunity for all of his acts other than signing and swearing to the truth of the facts alleged in the complaint. *See Kalina*, 522 U.S. at 130-31. His motion for summary judgment on the absolute immunity defense is granted on all of his acts other than swearing out the complaint; for that act, it is denied in part as to absolute immunity. Defendant Yarbrough also seeks qualified immunity, which the Court will discuss below. (*See Defendants' Supplemental Brief*, Docket No. 52.)

### Elements of § 1983 Malicious Prosecution Claim

Malicious prosecution can be both a state law claim and a § 1983 constitutional claim. The elements of the constitutional claim are as follows: (1) "that defendants prosecuted [plaintiff] with malice," (2) "without probable cause," and (3) "that they did

**MEMORANDUM DECISION AND ORDER  15**

so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal citation omitted). An additional element is that the underlying criminal case be terminated in the plaintiff's favor, an issue that is not disputed here. *Id*. at 1068.

<u>Malice</u>

In the malicious prosecution setting, an inquiry on the element of "malice" focuses on the subjective intent or state of mind of the party initiating the prosecution, while "probable cause" is a focus on the party's objective knowledge. *Estate of Tucker ex rel. Tucker v. Interscope Records*, 515 F.3d 1019, 1030-31 (9th Cir. 2008). Plaintiff bears the burden of bringing forward evidence that shows Prosecutor Edward Yarbrough acted with malice in initiating and pursuing the criminal action against Plaintiff. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

In *Tucker*, the Ninth Circuit provided examples of "malice" in the context of wrongfully-initiated civil legal actions, which the Court finds helpful here because they help illustrate the sort of ill will or illicit purpose necessary for a showing of malice:

> [M]alice is present when proceedings are instituted primarily for an improper purpose. Suits with the hallmark of an improper purpose are those in which: (1) the person initiating them does not believe that [the] claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.

515 F.3d at 1030 (internal citations omitted).

**MEMORANDUM DECISION AND ORDER  16**

To show that Defendant Yarbrough had the requisite subjective mental state of malice, Plaintiff states that, prior to the prosecution, Plaintiff made disparaging comments to Yarbrough, such as asking him "why he had shaved all the hair off his body because of paranoia [sic]" and suggesting that Yarbrough used cocaine. (*See Response*, p. 14, Docket No. 47.)  The context and time frame of these comments is unclear.  Plaintiff also alleges that Prosecutor Yarbrough "lost" all the evidence in three drug arrests in 2004-2005, and that the cases could not be prosecuted. *Id.*  In addition, Plaintiff alleges that in the criminal complaint brought against Plaintiff, Yarbrough stated that the incident occurred on March 4, 2004, rather than on March 29, 2004.  Yarbrough also has provided no particular reason why the case against Plaintiff was dismissed.

Considering these allegations, the Court concludes that Plaintiff has not brought forward sufficient evidence that Yarbrough prosecuted Plaintiff with malice.  It appears that Plaintiff made odd, disparaging personal comments to Prosecutor Yarbrough prior to and during Plaintiff's prosecution in May 2004, but, again, Plaintiff has shown no causal connection between these comments and the instigation of the criminal prosecution against Plaintiff.  Similarly, Plaintiff has shown no causal connection (and none can be readily inferred) between allegations that Prosecutor Yarbrough did not carry out the functions of his job on several drug arrests in 2004-2005 and the prosecution of Plaintiff in 2004.

While the criminal complaint filed by Prosecutor Yarbrough states that the incident occurred on March *4*, 2004, it also describes *only* the incident of March 29, 2004.

**MEMORANDUM DECISION AND ORDER  17**

There is no evidence in the record that shows the date discrepancy was the result of malice, rather than the result of a mistake.  The Court also can see no malicious purpose that would have been served by the prosecutor intentionally including the wrong date in the criminal complaint.  It does not appear that Plaintiff was confused by, or that he challenged, the discrepancy during the course of the criminal action, and the complaint could have been amended easily to correct the mistake.

Further, while Prosecutor Yarbrough did not bring forward any explanation for dismissal of the criminal action against Plaintiff other than the decision "was not due to a lack of probable cause" (*Affidavit of Yarbrough*, ¶ 7, Docket No. 40-7), this fact, along with the disparaging remarks Plaintiff made to Yarbrough and Yarbrough's mishandling of unrelated drug cases, are too weak to create a genuine issue of material fact as to whether Yarbrough initiated the action against Plaintiff for a wrongful purpose or out of ill will.

<u>Lack of Probable Cause</u>

Even if Plaintiff had brought forward sufficient evidence of malice, Plaintiff must also show that the prosecution was initiated without probable cause.  The Idaho Supreme Court explained the reasoning behind the difficulty in bringing and proving malicious prosecution cases:

> The action of malicious prosecution has never been regarded with favor by the courts; consequently it is hedged with restrictions which render it difficult to maintain. A plaintiff is required to sustain the burden of proving that the criminal proceeding was initiated by the defendant without probable cause. This is true even though the defendant is found to have been actuated

**MEMORANDUM DECISION AND ORDER  18**

by malice and for an improper purpose, since it is deemed good citizenry to
cause the prosecution of those who are reasonably suspected of a crime.
Courts reason that a defendant's personal motive should not render him
personally liable for the performance of a public obligation. The existence
of malice does not create even an inference that probable cause was lacking.

*Howard v. Felton*, 379 P.2d 414, 416 (Idaho 1963) (internal citations omitted).

Plaintiff has the burden of proof to show lack of probable cause. *Freeman*, 68

F.3d at 1189. The Ninth Circuit recently explained the type of evidence a plaintiff needs

to bring forward to show a genuine issue of fact as to probable cause exists:

The elements of malice and probable cause . . . require different showings.
The probable cause inquiry is objective, asking whether a reasonable person
would have thought that the claim was legally tenable "without regard to
[her] mental state." *Roberts v. Sentry Life Ins*., 76 Cal.App.4th 375, 90
Cal.Rptr.2d 408, 412 (1999). The only potential factual issue for purposes
of probable cause is "the state of the defendant's knowledge" at the time she
initiated the underlying lawsuit. *Sheldon Appel Co. [v. Albert & Oliker]*,
254 Cal.Rptr. 336, 765 P.2d [498,] 507 [Cal 1989]. "[W]hen the state of the
defendant's factual knowledge is resolved or undisputed, it is the court
which decides whether such facts constitute probable cause or not." *Id*. 254
Cal.Rptr. 336, 765 P.2d at 508.

*Estate of Tucker*, 515 F.3d at 1031.[3] Stated another way that is particularly relevant in

---

[3]  *Estate of Tucker* focuses on California tort law as the basis for the constitutional tort
cause of action.  The Court finds no significant difference between California's version of
malicious prosecution and Idaho's version.  *See Clark v. Alloway*, 170 P.2d 425, 428 (Idaho
1946), where the Court observed:

Numerous definitions of probable cause have been given. A definition
sufficiently exact to meet satisfactorily every possible test would be difficult, if
not impossible, to furnish. It may be nearly accurate to say that probable cause
consists of a belief in the charge or facts alleged, based on sufficient
circumstances to reasonably induce such belief in a person of ordinary prudence
in the same situation. *Boeger v. Langenberg*, 97 Mo. 390, 11 S.W. 223, 10
Am.St.Rep. 322 [Mo. 1889].

'Probable cause as is applicable to this action is (the existence of such facts or
circumstances as would excite the belief of a reasonable mind, acting on the facts

**MEMORANDUM DECISION AND ORDER  19**

this case, another court noted, "[t]he question here is whether defendant acted in good faith on reasonable or probable cause, not whether the details of the altercation as revealed by his investigation, were true." *Keylon v. Kelley*, 188 Cal.App.2d 490, 494, 10 Cal.Rptr. 549, 551 (Cal.App. 1961).

Here, Plaintiff has not shown that he was prosecuted without probable cause. The prosecutor relied on Daryl Crandall's investigation and police report, which itself relied on an eye witness, Rick Watson, the manager of Commercial Tire, who was not a party to the dispute about the travel trailer. (*Affidavit of Yarbrough*, ¶ 2, Docket No. 40-7.) The police report appears to be balanced in reporting each person's point of view. It notes that Victim Ray Robertson admitted to the officer that he had previously told Plaintiff he would "[w]ring [Plaintiff's] neck" if Plaintiff did not stop calling Robertson's wife about the travel trailer, and the report noted that Robertson and Plaintiff had engaged in a verbal argument and shoving before Plaintiff allegedly swung at Robertson. The report also takes note of Plaintiff's story, that Robertson grabbed him by the throat and arm and stated, "How would you like a sore arm?" Crandall collected written statements from Plaintiff and Donna and Ray Robertson. The investigation also appears thorough in scope, as Crandall noted that he checked for further witnesses, video surveillance, and physical evidence at the scene. (*See Affidavit of Crandall*, ¶¶ 2-6, Docket No. 40-6;

---

within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.)' *Luther v. First Bank of Troy*, 64 Idaho 416, 420, 133 P.2d 717, 719 [Idaho 1943].

**MEMORANDUM DECISION AND ORDER  20**

*Exhibit to Complaint*, Docket No. 3-2.)

The officer also viewed Plaintiff's alleged injuries the next day when Plaintiff dropped off his written statement, and saw "no discoloration or outward injury." (*Id.*, ¶ 6; *see also Exhibit to Complaint*, Docket No. 3-2.)  The Court notes that Plaintiff's video, taken several days after the incident, corroborates the officer's point of view, as it shows little or no outward evidence of a throat, neck, or shoulder injury.  (*Plaintiff's Supplement*, DVD-Lawson, Docket No. 53.)  This is not to say that Plaintiff was not injured, as Ray Robinson's statement admitted that Robinson "grab[b]ed his throat and choked him a little bit" (*Exhibit to Plaintiff's Complaint*, p. 4, Docket No. 3-2), but it merely shows that the officer's observation that Plaintiff's injury was not outwardly apparent is reasonable.

In short, the Court concludes that the police report and investigation provided probable cause for the arrest of Plaintiff because a reasonable person who had reviewed the report would have thought that the disturbing the peace charge was legally tenable.

While Yarbrough dismissed the case without stating a particular reason, he has stated that it was *not* for lack of probable cause.  (*Id.*, ¶ 8.)  Plaintiff has not provided any evidence showing that the prosecution was initiated for a reason *other* than the results of the police investigation. Plaintiff has not shown that Yarbrough or Plaintiff's criminal defense counsel found evidence in the course of the prosecution that would have destroyed the basis for probable cause, requiring the prosecutor to dismiss the action before the date the motion to dismiss was actually filed.  For example, while Plaintiff

**MEMORANDUM DECISION AND ORDER  21**

alleges that he has evidence that Victim Ray Robinson told him that he would lie to police, Plaintiff has brought forward no evidence showing that *Witness Rick Watson* lied and no evidence that Defendant Yarbrough *knew* that Victim Ray Robinson lied.  The Court concludes that Plaintiff has not met his burden of proof to bring forward evidence showing a genuine issue of material fact exists as to probable cause for Prosecutor Yarbrough's initiation and pursuit of the criminal action.

<u>For the Purpose of Denying Plaintiff His Constitutional Rights</u>

Finally, even if Plaintiff had shown that there was a genuine issue of material fact as to the malice or probable cause elements of the malicious prosecution claim, he must still how that the prosecution was has not show that the prosecution was "conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to denial of constitutional rights."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (citations omitted).  The Ninth Circuit reiterated the importance of the "intent to deprive a person of a civil right" factor in *Awabdy v. City of Adelanto*, where the Court found sufficient genuine issues of material fact to allow the plaintiff to proceed past summary judgment.  368 F.3d at 1066.

In *Thomas v. City of Portland*, 2007 WL 2286254 (D.Or. 2007), the district court emphasized how this element distinguishes a common law tort claim from a constitutional claim, using the particular facts in *Awabdy* as an example.  The *Thomas* Court reasoned:

> This case is quite dissimilar to *Awabdy* in which the court refused to dismiss a malicious prosecution claim under § 1983. Two weeks before the [*Awabdy*] plaintiff's bid to serve another term on the City Council of

**MEMORANDUM DECISION AND ORDER  22**

Adelanto, the San Bernardino County District Attorney charged the plaintiff with embezzling public funds. The plaintiff pled not guilty prior to election day and, over one year later, the Superior Court granted a motion by the prosecutor to dismiss the charges. By that time, the plaintiff was no longer serving on the City Council, having been defeated for election. It was unclear why the prosecutor dismissed the charges against the plaintiff, leading to an inference of undue influence exerted on the prosecutor for political reasons. In contrast, here it is clear that the Multnomah County District Attorney's Office made an independent prosecutorial decision to pursue four misdemeanor criminal charges against Thomas.

*Id*. at *14.  In contrast, In *Thomas*, the plaintiff had been prosecuted for the alleged crimes of assault, menacing, and intimidation after he showed his neighbor a gun when she verbally confronted him about attaching his fence to her fence between their two properties, and there were no evident ulterior reasons for the prosecution, as there had been in *Awabdy*.

Here, similar to the *Thomas* case, Plaintiff has not presented sufficient evidence that Defendants acted *for the purpose* of denying Plaintiff's equal protection or other constitutional rights.  In *Thomas*, the Court rejected the plaintiff's arguments that officers had misrepresented facts, done a poor investigation, or omitted exculpatory facts from their report.  *Id*. at *13-14.  Here, the evidence shows that officers collected evidence from all witnesses and participants, sought written statements, checked for further witnesses, checked for video surveillance, and checked for physical evidence at the scene. There is no evidence that Yarbrough swore out the complaint against Plaintiff to deprive him of his rights, rather than for the reason that probable cause existed from the report and investigation.

**MEMORANDUM DECISION AND ORDER  23**

Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Plaintiff has come forward with no evidence showing that he is a member of a protected class who was prosecuted merely because he was a member of that class. Even under a rational basis standard or a "class of one" theory, he has not demonstrated that he was similarly situated to others and was treated in a disparate manner, and that there was no rational basis for the disparate treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993). He has not pointed to other incidents that would show that prosecutors intentionally treated him differently from other citizens similarly charged in Owyhee County. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) (to establish a discriminatory effect the plaintiff must show that similarly-situated individuals were not prosecuted). In other words, Plaintiff has shown neither "discriminatory effect," nor that Defendants "were motivated by a discriminatory purpose." *Wayte v. U.S.*, 470 U.S. 598, 608 (1985).[4]

---

[4] Plaintiff has also alleged that Defendants initiated the prosecution for the purpose of depriving Plaintiff of his *due process* rights. *Awabdy* made it clear that the deprivation has to be a *specific* constitutional right to be brought under § 1983 and not a due process claim. 368 F.3d at 1069-70 ("The principle that *Albright* [*v. Oliver*, 510 U.S. 266 (1994),] establishes is that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause."). *See also Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 43 (1st Cir. 1994) (the availability of an adequate remedy for malicious prosecution under state law

**MEMORANDUM DECISION AND ORDER  24**

Finally, there is no specific right to stand trial and defend a charge rather than have the charge dismissed by the prosecution prior to trial.  So long as a charge is supported by probable cause that a person committed an offense as defined by statute, the prosecution has "broad discretion as to whom to prosecute."  *Id.* at 607 (internal citation and punctuation omitted).

Inherent in the broad discretion to bring a prosecution is also the discretion to dismiss a case unless dismissal would implicate another important right, like the right to be free from double jeopardy.  "At common law, the prosecutor had the unrestricted authority to enter a *nolle prosequi* [declaration that he would not prosecute] without the consent of the court at any time before the empaneling of the jury."  *U.S. v. Salinas*, 693 F.2d 348, 350 (5th Cir. 1982).  Later, courts adopted criminal rules requiring that prosecutors obtain leave of court in order to dismiss a prosecution; in such case, they had to show that dismissal was in the public interest.  *Id.*; *see, e.g.*, Fed. R. Crim. P. 48; Idaho R. Crim. P. 48 (allowing dismissal if it will "serve the interests of justice").  "[T]he courts have agreed that the primary purpose of the rule is protection of a defendant's rights: '[t]he purpose of the rule is to prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy.'"  *Salinas*, 693 F.2d at 350 (internal citation omitted).

Here, Prosecutor Yarbrough sought leave to dismiss the case because "[t]he State

---

is fatal to appellants' procedural due process claim).

**MEMORANDUM DECISION AND ORDER  25**

no longer wish[ed] to pursue this matter," and "[t]he interests of justice w[ould] be best served by the granting of this motion."  (*Affidavit of Yarbrough*, Exhibit E, Docket No. 40-7.)  He has declared that lack of probable cause was not the reason for dismissal; this Court has determined that probable cause existed to bring the charges.  The dismissal was not a vehicle or guise for a Fifth Amendment violation, because charges were not brought again in violation of the Double Jeopardy Clause, or at all.[5]

In summary, because Plaintiff has failed to bring forward admissible evidence showing that Defendant Yarbrough acted with malice, lacked probable cause, or acted with the purpose of depriving Plaintiff of a constitutional right, he is entitled to summary judgment on the federal civil rights malicious prosecution claim.

### Equal Protection Claim

Plaintiff was also permitted to proceed on an equal protection claim, outside the malicious prosecution context.  The law governing equal protection claims is set forth directly above.  Viewing the claim as a separate equal protection claim, the Court concludes that Plaintiff has failed to bring forward any evidence that he was denied equal protection by virtue of being a member of a suspect class or even as a class of one.  No cases of similar persons being treated in a dissimilar way were brought to the attention of the Court.  As a result, Defendants are entitled to summary judgment on this claim.

### Qualified Immunity

---

[5]  The Idaho statutes and criminal rules are drafted such that they do not necessarily prohibit subsequent prosecutions.  *Stockwell v. State of Idaho*, 573 P.2d 116, 122-23 (Idaho 1977).

**MEMORANDUM DECISION AND ORDER  26**

Defendant Yarbrough asserts entitlement to qualified immunity for his actions in swearing out the criminal complaint. In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). The Court asks two questions in considering application of the qualified immunity defense: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right"; and (2) whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). The Court may consider either prong of the *Saucier* test first. *Pearson v. Callahan*, 129 S.Ct. 808 (2009).

Because Plaintiff has failed to show that Defendant Yarbrough's conduct violated a constitutional right when he swore out the criminal complaint based on probable cause, Yarbrough is entitled to qualified immunity for that act and to summary judgment on the federal claims.

### State Law Claims

#### Failure to File Notice of Tort Claim

Defendants assert that Plaintiff's state law malicious prosecution claims are precluded for failure to file a notice of claim as required by the Idaho Tort Claims Act

**MEMORANDUM DECISION AND ORDER  27**

(ITCA).[6]  *See*  I.C. § 6-906.  Claims subject to the ITCA include "any written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment."  I.C. § 6-902(7).  A person bringing such a claim against a political subdivision of the state or against any employee thereof is required to file a notice of claim with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered.   I.C. § 6-906.

Idaho Code § 6-908 provides that "[n]o claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act."  The Idaho Court of Appeals has held that "the failure to file a claim within the 180-day time limit acts as a bar to any further action."  *Mallory v. City of Montpelier*, 885 P.2d 1162, 1164 (Idaho Ct. App. 1994).

Here, Plaintiff does not controvert Defendants' statement of fact that he did not provide a formal written notice of claim to the county to complain of the county officials' acts and give notice of his injuries.  His argument that to do so would have been futile in

---

[6]This defense applies only to state law, not federal law, claims.  A state's notice-of-claim statute which provides that no action may be brought or maintained against a state government subdivision unless claimant provides written notice within a certain period of time is preempted when a federal civil rights action is brought in state court.  *See Felder v. Casey*, 487 U.S. 131 (1988); *Ellis v. City of San Diego*, 176 F.3d 1183, 1191 (9th Cir. 1999); *Sweitzer v. Dean*, 798 P.2d 27, 31 (Idaho 1990).

**MEMORANDUM DECISION AND ORDER  28**

obtaining a remedy is rejected as contrary to the mandatory language of the statute.  *See*

*Magnuson Properties Partnership v. City of Coeur D'Alene*, 59 P.3d 971, 974-75 (Idaho

2002) ("Compliance with the notice requirement is a 'mandatory condition precedent to

bringing suit, the failure of which is fatal to a claim, no matter how legitimate.'")

(citations omitted).  As a matter of law, Plaintiff may not pursue his state law claims, and

Defendants are entitled to summary judgment on the state law claims.

<u>Failure to File Bond</u>

Defendants argue that Plaintiff's state law claims should be dismissed because

Plaintiff failed to post a bond pursuant to Idaho Code § 6-610.  The federal district court

has previously considered and rejected this defense with respect to in forma pauperis

litigants proceeding on state law claims in federal court.  *See Ramirez v. City of*

*Ponderay, 2008 WL 907382* (D. Idaho 2008) (finding § 6-610 applies to all persons

bringing state law claims against law enforcement officers, but that a person who is

indigent may seek a waiver of the bond requirement); *Pugsley v. Cole*, 2005 WL 1513112

(D. Idaho 2005) (noting that earlier cases such as *Pigg v. Brockman*, 314 P.2d 609 (Idaho

1957), have been superseded by the 1977 enactment of I.C. § 31-3220, which allowed

Idaho courts to waive filing fees, costs, and security for indigents).  The Idaho Court of

Appeals has adopted this same reasoning for state law claims proceeding in state court.

*See Hyde v. Fisher*, 152 P.3d 653, 656 (Idaho Ct. App. 2007); *Beehler v. Fremont*

*County*, 182 P.3d 713, 717 (Idaho Ct. App. 2008) (noting that waiver is available for

indigent nonprisoner litigants).  Plaintiff, here, has been granted in forma pauperis status

**MEMORANDUM DECISION AND ORDER  29**

(Docket No. 10).  Therefore, Defendants are not entitled to summary judgment on this defense.

## PLAINTIFF'S MOTIONS

### Motion for Summary Judgment (Docket No. 37)

As set forth above, because Plaintiff has failed to bring forward evidence sufficient to show that a genuine issue of material fact exists as to the elements of his claims, he is not entitled to summary judgment in his favor.  For the foregoing reasons, Plaintiff's claims shall be dismissed with prejudice.

### Motion to Amend (Docket No. 47)

Plaintiff states that he now wishes to amend his Complaint to add Owyhee County (*Response to Motion for Summary Judgment*, p. 2, Docket No. 47) .  The Court previously denied this request and explained why Plaintiff cannot add Owyhee County.  (*See Order of January 10, 2008,* Docket No. 35.)  He will not be permitted to add the County at this point, either, for the reasons set forth in the Order of January 10, 2008.

### Motion under Title 18 U.S.C. § 241 (Docket No. 53)

Plaintiff has filed a set of documents entitled "motion," in which it appears that he is requesting that Defendants be charged with a federal criminal violation under 18 U.S.C. § 241 (*Plaintiff's Supplement*, Docket No. 53).  He alleges that the Fuquays came to his motorhome and physically assaulted him and the Martins, then the deputy came out and made his report.  Later that same night, the Fuquays came back to Plaintiff's motorhome a second time, shooting and slashing his tires, but the sheriff refused to amend the report to include the latter incident.  He states that the sheriff and prosecutor defendants in this case

**MEMORANDUM DECISION AND ORDER  31**

refused to listen to his audiotape recording and to review his DVDs, even though he called the prosecutor about 40 times, leaving many messages. Plaintiff alleges that posse members and/or deputies took photographs of his bruises on March 5 or 6, 2002, but the photographs were lost.  Plaintiff argues that all of this was done "under color of law." (See Docket No. 53.)

Federal criminal statutes do not provide a basis for a private cause of action, but, rather, must be prosecuted by the Attorney General.[7]  Therefore, Plaintiff may not proceed under Title 18 in this action.

In addition, Plaintiff has no constitutional right to have another person criminally prosecuted.  *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) ("a private citizen

---

[7]*See, e.g., Lamont v. Haig*, 539 F.Supp. 552, 558 (D.S.D. 1982), where the court noted:
Plaintiffs have alleged causes of action under four federal criminal statutes, 18 U.S.C. §§  2, 241, 371 and 1385. The great weight of authority is that neither § 241 nor § 371 provide private causes of action. "Section ... 241 ... of Title 18 provide(s) criminal remedies for the violation of certain constitutional rights, not a private cause of action." *Sauls v. Bristol-Myers Co.*, 462 F.Supp. 887, 889 (S.D.N.Y.1978). "With regard to the alleged violations of 18 U.S.C. § 241 ... (and) 371 ... plaintiff has failed to cite, and the court has been unable to locate, any authority which would support implying a civil cause of action for violations of these provisions. To the contrary, the case law indicates that violation of these statutes does not give rise to a civil cause of action." *Fiorino v. Turner*, 476 F.Supp. 962, 963 (D.Mass.1979).
 *Accord, Bryant v. Quintero*,  2001 WL 1018717, *2 (N.D.Cal. 2001) (there is no private cause of action under 18 U.S.C. §§ 241 and 242, and no amendment can cure such a deficiency); *Pawelek v. Paramount Studios Corp*., 571 F.Supp. 1082, 1083 (N.D.Ill.1983) (no private cause of action is inherent in federal criminal statutes defining civil rights violations).

**MEMORANDUM DECISION AND ORDER  32**

lacks a judicially cognizable interest in the prosecution or nonprosecution of another");
*Johnson v. Craft*, 673 F.Supp. 191, 193 (D. Miss. 1987) ("The decision to prosecute a particular crime is within the authority of the state, and there appears to be no federal constitutional right to have criminal wrongdoers brought to justice."). If Plaintiff wishes to contact the United States Attorney General regarding criminal prosecution, he may do so. For all of the foregoing reasons, the motion is denied.

### Motion to Refile on Private Citizen Defendants (Docket No. 54)

Plaintiff has submitted a "motion to refile on these defendants," referencing Ray Robertson, Donna Robertson, Evan Shaw, Rick Watson, and Linda Gustavson. This motion appears to have been filed ex parte, as there is no mailing certificate noting that a copy was provided to Defendants' counsel. It is subject to dismissal for that reason, alone. Nevertheless, the Court considers Plaintiff's motion and denies it for the reason that Plaintiff has provided insufficient evidence that any of these individuals conspired with state actors to violate Plaintiff's constitutional rights. The elements of a conspiracy to deprive another of his civil rights are as follows: "(1) the existence of an express or implied agreement among the [defendants] to deprive him of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991) (*Bivens* action relying on § 1983 case, *Dooley v. Reiss*, 736 F.2d 1392, 1394-95 (9th Cir. 1984)).

To prove a conspiracy between state actors and a private party under § 1983, the plaintiff must bring forward evidence showing "an agreement or 'meeting of the minds'

**MEMORANDUM DECISION AND ORDER  33**

to violate constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 438 (1983) (citation omitted). Each conspirator "need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id*. A plaintiff cannot "defeat the properly supported summary judgment motion of a defendant charged with a conspiracy without offering 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby*, 477 U.S. at 256.

Plaintiff has not provided any facts showing an agreement or plan among the various individuals involved in the incidents set forth above. Neither has Plaintiff provided any facts showing that Plaintiff was deprived of a constitutional right. Plaintiff was prosecuted for a single incident for which there was probable cause. As such, Plaintiff was not deprived of a constitutional right.

A final basis for denial of the motion is that Plaintiff has not provided any allegations showing that these private individuals allegedly violated his rights after May 2, 2004. Plaintiff's factual allegations concerning these defendants arise from March 4, 2002 (alleged assault and battery by Fuquays), July 18, 2003 (travel trailer stolen or repossessed), November 20, 2003 (alleged assault and battery by Lawsons), and March 29, 2004 (alleged assault and battery by Ray Robertson) (*see Plaintiff's Supplement*, p. 20, Docket No. 53). Therefore, any such claims are barred by the statute of limitation. For all of these reasons, the motion to refile is denied.

### Untitled Motion (Docket No. 55)

Plaintiff has also submitted documents entitled "motion." This appears to have

**MEMORANDUM DECISION AND ORDER  34**

been filed ex parte, and for that reason it is subject to denial.  However, the Court has reviewed the content of the motion and will deny it for lack of any merit.

In his motion, Plaintiff again states that he wishes to re-open his prior closed cases or add defendants and causes of action from prior cases to this case, referencing CV06-28-S-BLW, *Frost v. Fuquay*, and CV06-173-S-LMB, *Frost v. Lawson*.  He requests that the state actor defendants be recalled, disbarred, jailed, or fired for aiding and abetting several felonies with injuries, referring, again, to the incidents occurring prior to May 2, 2004.  For all of the reasons set forth above, as well as those in the Court's previous orders, the motion shall be denied.

## CONCLUSION

Plaintiff had several unfortunate altercations with individual citizens of Owyhee County.  These citizens are not state actors, nor has Plaintiff provided facts showing that they conspired with state actors.  Plaintiff attempted to bring actions against these citizens in state court.  He was successful in one of his actions, obtaining a judgment of $550, but he was unsuccessful in two other actions.  Plaintiff has no federal cause of action against these individual citizens, and even if he has, such actions are barred by the statute of limitation.

Plaintiff was dissatisfied with the way Owyhee County law enforcement officers and prosecutors made, handled, and evaluated the reports arising from the altercations.  However, he has not shown that he can meet the elements of any federal cause of action that would allow him to proceed to trial.  Similarly, he cannot add other Owyhee County

**MEMORANDUM DECISION AND ORDER  35**

officials or the County itself to his § 1983 claims because there are no allegations that the officials had any participation in the incidents, that a County policy or custom caused the alleged violations, or that his amendment would be timely.

Most of Plaintiff's claims that were stated in his complaint and amended complaint are barred by the statute of limitation. Plaintiff's claims arising after May 2, 2004, are timely. However, Plaintiff did not show that Gary Aman, Daryl Crandall, or Matthew Faulks had any personal participation in any event after that date that would give rise to a cause of action.

Defendant Prosecutor Yarbrough is entitled to dismissal of Plaintiff's civil rights claims because Plaintiff has not shown sufficient facts supporting the elements of the cause of action, namely (1) malice; (2) lack of probable cause; and (3) intent to violate a civil right. Prosecutor Yarbrough is also entitled to absolute immunity for his prosecutorial acts, and to qualified immunity for his act of swearing out the complaint.

The Court rejected Defendants' failure-to-post-a-bond argument on the basis of Plaintiff's indigent status, but concluded that Plaintiff's state-law claims are barred by Plaintiff's failure to file a notice of tort claim with Owyhee County, as required by Idaho statute. As a result of all of the foregoing, Defendants' motion for summary judgment shall be granted, and Plaintiff's entire case shall be dismissed with prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 40) is GRANTED. Plaintiff's Complaint is

**MEMORANDUM DECISION AND ORDER  36**

DISMISSED with prejudice.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Summary

Judgment (Docket No. 37) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion to Supplement

(Docket No. 52) is GRANTED.  The Court has considered both Defendants' Supplement

(Docket No. 52) and Plaintiff's Supplement (Docket No. 53).

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Refile on These

Defendants (Docket No. 54) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion under Title 18

U.S.C. § 241 (Docket No. 53) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's untitled Motion (Docket

No. 55) is DENIED.



DATED:  **March 19, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER  37**